May it please the court, Courtney Moran on behalf of the government. For decades before the District Court's injunction, the government, acting pursuant to the Attorney General's discretion, the government had been conducting immigration bond hearings for noncitizens detained under Section 1226A where the noncitizen had the burden to prove his eligibility for release and the immigration judges could consider any relevant evidence in making a custody determination. Last year, the District Court here, without certifying a class, issued a class-wide preliminary injunction creating a categorical rule that noncitizens in Maryland may never be required to bear the burden of justifying their release and bond hearings and that immigration judges must always consider petitioner's two preferred factors in those hearings. This court should vacate that class-wide preliminary injunction for three main reasons. First, Section 1252F1 is a jurisdictional bar that prohibits the District Court's class-wide injunction because the injunction restrains the Attorney General's exercise of discretion to implement Section 1226A. Second, even if this court reaches the merits of petitioner's claims, Congress has long granted the Attorney General the discretion to authorize a noncitizen's detention or release during removal proceedings and the Supreme Court has upheld the constitutionality of that detention without ever holding that due process requires the government to bear the burden of justifying that detention, let alone by clear and convincing evidence, nor has it required an immigration judge to consider alternatives to detention or noncitizens' ability to pay a set bond amount. And third, so counsel let me let me stop you there, just so I make sure we're on all about what the Supreme Court has done. The Supreme Court has addressed in in Demore, you know, Section C and the argument about whether an individualized hearing versus a categorical hearing could be made. And then the court has addressed in Jennings the statutory arguments about A, and an argument that A should be construed in a way that the petitioners construe here, but not the constitutionality of that. And I don't disagree, we might can get hints from that, but I just want to make sure we're on the same page. You don't contend, do you, that there's a controlling Supreme Court case on all fours with the arguments made here today, do you? That's correct, Your Honor. The Supreme Court has not specifically addressed Section 1226A detention and its constitutionality, but it has upheld the attorney general's discretion to authorize bond or to detain a noncitizen during removal proceedings since 1950 when the statute at that time transferred the discretion to the attorney general to authorize release or not. How could it possibly be consistent with due process to require someone who has constitutional rights, an alien, but has constitutional rights going through this process to put the burden of proof on them? How can that possibly be consistent with due process? And hasn't just about every put the burden of proof on the alien. Now, there are issues as to what that burden should be, clear and convincing, or whether or not it should be provided to the evidence. Now, that's even different from what's in the bail reform act. How can you argue that due process, that constitutional due process allows the government to put the burden of proof on someone who in very, very often, A, doesn't have a lawyer, doesn't have a right to a lawyer, B, may not speak English, and doesn't have any access to obtaining evidence? How can you argue that's constant with due process? A few responses to that, Your Honor. First, of course, noncitizens in removal proceedings are entitled to due process, entitled to due process in bond proceedings. But what that looks like is different depending on the context of the proceeding. The where the burden of proof is. I mean, I don't know of another setting in which someone who is facing loss of their liberty has the burden to prove that they're not a risk of life or a danger. So, thank you. Again, the due process is flexible and the Supreme Court has consistently held that over in immigration matters, the political branches, their authority is at its zenith. And so there are certain rules that can be applied in these proceedings that may not necessarily apply to citizens. But in regards to your points about or Jennings being on a statutory question, even there, the court was ruling on the or disagree with the Ninth Circuit's interpretation of the pre-removal order statutes as a matter of constitutional avoidance. And even in dissent, Justice Breyer identified constitutional issues with those statutes. And even there, he said that he would require the bond hearings to be held in the normal, with the normal procedures and not the special procedures that the Ninth Circuit had imposed, which included the burden on the government by clear and convincing evidence. Counsel, I want to ask a question about how we evaluate the due process issue. The more, again, it's a different subsection, but it is talking about substantive due process related to detention. And there is not, they don't undertake a Matthews versus Eldredge analysis. They state that, you know, a non-citizen has constitutional rights. They state things that would be required for non-citizens or for citizens aren't necessarily required for non-citizens. They look at the problem and the evidence of the problem Congress was attempting to redress. And then they say that if the procedures redress that, it does not need to be in the least burdensome way. And so my question is, most due process analyses I've seen on various issues do use Matthews versus Eldredge. This one doesn't. Do we follow the Demore analysis, or we do a Matthews versus Eldredge analysis? Well, I think you, the court should start with the Demore analysis. Again, understanding that it's about a different statute, but it still lays out the principles that broadly apply to immigration detention. And it goes through its immigration detention precedent and lays out that even when categorical detention isn't required, the attorney general has had the discretion to authorize detention or release. But even under the Matthews analysis, which the Supreme Court hasn't even mentioned in an immigration case since the 80s, since Landon v. Plasencia, and even there didn't strictly apply the Matthews analysis. So we don't think it applies. In Landon v. Plasencia, the last time that the Supreme Court mentioned Matthews v. Eldredge, it emphasized that in balancing the interest between the private interests and the government interests and the procedures available, the courts have to take into account that the control over matters of immigration is a sovereign prerogative, largely within the control of the deportation procedures here because the reviewing court may find them preferable. And the procedures that already exist account for, sufficiently account for the private interest here in being free from detention against the government interest in enforcing its immigration laws in a reasonable manner. The non-citizen has the opportunity to request when they're first arrested from the ICE officer. They can then receive a bond hearing to review that determination from an immigration judge. They can present any relevant evidence that may be available to them. And they can appeal that decision from the immigration judge to the Board of Immigration Appeals. And then if they have a change in circumstances, they can request a new bond hearing in front of an immigration judge. So there are several layers of... I think Jeff Qualibon's question was, do you think we should apply the Matthews versus Eldredge standard in this setting or not? I don't think the court needs to apply it. I think that the Supreme Court's immigration detention precedent sufficiently explains that the Attorney General's discretion to set bond should generally be accepted. But if the court were to apply the Matthews analysis, then the procedures are still fully compliant with due process under the analysis. I wanted to also go back to your point, Judge Urbanski, about the weight of the case law. In fact, there's no other circuit court other than the First Circuit's recent decision, a split decision in Hernando's-Lara. No other circuit has created a categorical rule like what District Court did here to place the burden on the government, even in the initial bond hearing. So applying a categorical rule that applies to every single non-citizen who's detained, even if they, as the named petitioners did in this case, have conceded removability, even if they do have a lawyer, as two of the named petitioners did in this case in their bond hearings, even with all of those circumstances at play. I'm sorry, Counsel. The Ninth Circuit's opinion in Singh v. Barr and the Second Circuit's opinion in Velasco-Lopez v. Decker also support this proposition that due process is violated when the burden is on the alien. Don't those cases support that proposition as well as the case that was decided in August by the First Circuit that you know? Well, respectfully, no, they don't support the proposition that the burden must be on the government at the initial bond hearing. Both of the Second Circuit and the Ninth Circuit's decisions support the idea that potentially after some period of time of detention, then in the Second Circuit, Velasco-Lopez specifically says that potentially at the outset of detention, the government... Counsel, with all due respect, Singh v. Barr says the court agrees with the reasoning of its sister courts and concludes that the Fifth Amendment due process clause requires the government to bear the burden of proving by clear and convincing evidence that continued detention is justified at a 1226A bond determination hearing. Sure, it's not the initial one, but it's the same principle and the same thing in Velasco-Lopez. We got three circuits saying the burden ought to be on the government, right? And so are there any circuits that say the burden should be on the aliens? So again, in seeing the court, the Ninth Circuit was addressing a specific type of hearing that happens after a certain amount of time when a person has a petition for review that is pending. And so addressing after some period of time, then the burden might shift. So that's also what the did not address the issue of what burden might be required at the initial bond hearing. But the Third Circuit addressed a petitioner's claim that... Because the Second Circuit in Velasco-Lopez, Mr. Velasco-Lopez was held for 15 months without bond. He filed a habeas petition and the district court required a new hearing at which the United States had the burden approved and he was released on bond and the Second Circuit affirmed, right? So the same notion, burden approved should be on the government. Is there a circuit court that agrees with you that the burden approved should be on the aliens? Respectfully, Your Honor, the Second Circuit affirmed on the alternative ground of prolonged detention. It did not address the government's primary issue on appeal, which was that the burden shouldn't be on the government at the initial hearing, which is what our appeal is about here, the initial bond hearing. So, but then the Third Circuit addressed a, in Borbot, addressed a prolonged detention claim from a petitioner under Section 1226A detention. And the Third Circuit held that even after a prolonged period of time, that person did not, due process didn't require a new bond hearing for that person because he had already received the procedures that were available to him under Section 1226A, which include a bond hearing where the petitioner has the burden to establish to the satisfaction of the immigration judge, his eligibility for release. Well, and that's because at Borbot, the Third Circuit said, oh, look, this comes awfully close to reviewing the discretion in deciding whether to hold the second bond hearing. It's awfully close to deciding, to invading the discretion of the attorney general, which is a different issue. And that's a different issue. The statute says that the courts can't do that. I get that. Okay. But all we're talking about is the burden here. Right. I think that the Third Circuit's decision is still addressing, still had to address the procedures that were available to the non-citizen in the initial hearing and concluded that he had those procedures where he had the burden to establish his eligibility for release. And because of that, because he received the process that was due to him, he wasn't entitled to a new bond hearing, even after a prolonged period of time. All right. Now, can I ask you one additional question? I know your time's almost up, but I want to talk about the 1252F class issue, right? Because I think that's a significant issue in this case. Would it prohibit the Barza District Court from engaging in class-wide declaratory relief as opposed to injunctive relief? No, it wouldn't necessarily prohibit class-wide declaratory relief. Of course, here we're in a preliminary injunction posture, so that's not an issue right now. And I think that if the court agrees with us, then class-wide injunctive relief is barred by 1252F1, then the court, the district court would have to assess whether a Rule 23B2 class could even be sustained based on the potential for declaratory relief alone. Thank you. Ms. Gonzalez? May it please the Court, Carmen and Gina Gonzalez for petitioners. This case is about whether the government can deprive individuals of their physical liberty for months or even years without the basic procedural protections that due process requires. The District Court below joined the near-unanimous line of cases, including the only courts of appeals to have addressed these particular questions, in holding that before the government can take a non-citizen and deprive them of their liberty, put them in prison-like conditions, pending their removal proceeding, that it has to justify that detention. And all that the injunction does is require basic procedural protections, meaning the government come in and show that the detention is justified either by a reference to flight risk or to danger, and that the government ensure that detention of non-citizens is not happening solely due to their but in the criminal context of the Bail Reform Act, there are a whole host of people who have the burden placed on them in a rebuttable presumption cases for their detention. So, various drug crimes, various crimes of violence, there's a whole set of them. And the statute says that in those cases, there's a presumption that you're a danger and a flight risk, and so you need to be detained, right? And so it's in effect the same burden shifting that we've got here. And yet, and that applies, and applies literally every single day in Judge Urbanski's courtroom and others, to have people detained where they bear the burden to prove that as a citizen defendant, they're not a flight risk and they're not a danger to the community. Help me understand why that doesn't suggest that due process is comports with the idea that the burden of proof is not the central inquiry, but instead the central inquiry is notice and opportunity for here. So, Your Honor, I would direct the court to, the only case that has addressed the procedures, the Supreme Court has addressed the procedures under the Bail Reform Act, which is where these presumptions are set out, is Salerno. And in Salerno, the court does talk about this category of particularly dangerous individuals, but finds that the detention there is justified, satisfies procedural due process, I apologize, because the government, after a full-blown adversarial hearing, has determined by clear and convincing evidence that they are dangerous. So, to my knowledge, no court has addressed this question of whether, the Supreme Court has not addressed this question of whether the flipping of the presumption under the Bail Reform Act, other than in Salerno, satisfies procedural due process. Let me ask maybe a different way. Under your theory of the case, is that flipping of the burden unconstitutional? Well, Your Honor, so this is going to be my second answer, which is that Congress itself is setting out what those presumptions are, and it's doing so based on findings about what these, again, this particular category of criminal defendants, about their dangerousness, about their flight risk under the Bail Reform Act. It's very similar to the analysis the court engages in, in DeMoore, in saying the departure from the traditional way that we look at civil detention here is justified because Congress has engaged in this very detailed fact finding about what's required under these circumstances. What Congress did here was delegate that decision to the Attorney General, right? And so Congress said, I take it you're saying, well, if Congress made findings and flipped the burden, that'd be okay. But instead, they say, listen, we want the branch that actually knows something about immigration to make this decision, and we don't have a non-delegation challenge. So that's a decision that's delegated to the Attorney General. He says that, you know, I want to use the same policy that the Bail Reform Act uses, and I'm going to flip the burden. And, you know, it's okay for criminal defendants. And, you know, if anything, the Supreme Court case law seems to suggest to us that the criminal defendant has a greater procedural due process right than the non-citizen in these contexts, right? So, I mean, I'm having a hard time understanding why that treatment and that sort of unquestioned use of that throughout the country isn't really a strong indication that due process doesn't require what you're asking. Well, Your Honor, so I would say actually three answers to that question. The first one is that when Congress enacts a statute that's an issue here, when it amends it just to increase the amount of bail that's required, it leaves the rest of the text untouched. And that text has been interpreted for decades by the agency to mean that the agency, that the government, has to justify the detention. So, if anything, Congress... But you brought an arbitrary and capricious challenge? No, Your Honor, but... The agency gets to change their mind, right? I mean, that's the whole point of this. It's delegated to the agency. That's not answering the due process question, right? Maybe you want to challenge the decision-making process. I don't think you can. That's probably why you're not doing it. But, you know, but that's the decision-making process. But what it doesn't suggest is that the executive, just like Congress, is entitled to make the burden that ought to be allocated in the way it's chosen. So, Your Honor, that actually takes me to my second answer to that question, which is that even when Congress has been clear that it's delegating authority over the detention matters to the executive, right? The Supreme Court in Cervantes explicitly recognizes the statute uses may and may connotes discretion. That discretion, however, the court goes on to say, is subject to But counsel, let me... But don't you run into... I mean, the Supreme Court's addressed that case, and pretty clearly said, I mean, I think we can agree about what the court has, whether they've directly addressed the issue before us. But I can't remember. I guess it was in Jennings. I may be missing my cases. I've got a lot of them in my head right now. But they pretty clearly limit that case and distinguish C because we don't have an indefinite period. We have a set point. It may take a while sometimes, but we know this period ends when there's an order about removal. So it seems to me that case has been pretty clearly limited by the And so I don't think the may helps you because there the may had no point at which you would know there's an end point. Here, we don't have a date end point, but we got an event end point. And it seems like that distinguishes it. And the Supreme Court's, whether you agree with that or not, the Supreme Court spoke on it, hasn't it? Well, Your Honor, so the Supreme Court is and comparing that to the language in Zavidas, which says may and the court explains, well, we interpret it may to impose this reasonable limit because, yes, of the indefiniteness of the detention and the fact that you could potentially have someone detained without foreseeable removal. The indefiniteness, however, goes to the remedy that the court grants the noncitizen. It doesn't go to the initial question about whether that discretion is subject to constitutional limits. So in Zavidas, because you're faced with indefinite detention, the court says we're going to read the statute to say after six months, that detention, the reasonableness stops being assumed. And therefore, everything, you know, the statute doesn't control anymore. You can go to a district court, you can file a habeas and say, you know, my detention is not reasonably foreseeable. You should release me unless the government can show that I fall into this category of especially dangerous individuals. And this is how the First Circuit in Hernandez-Lara addresses Zavidas, right? It says due process is flexible and it adapts to the particular circumstances. In Zavidas, faced with indefinite detention, the answer was we're going to impose a reasonable limit. After that time period, that detention we're going to presume is not reasonable anymore. Now, here the question is, what is due process required here, where we have this, not the post-removal individuals who are at issue in Zavidas, but people whose removability hasn't been determined, people with no criminal records, people who came here as children. And as to those people, can the court detain them for months or even years pending their removal proceedings? Here's your problem, that you go right back to it, you can't help but say it either. Does the court detain them? It's not the court, it's the executive. The point is that the court doesn't have a role in it, right? What you said is, can the court detain them? No, it's whether the executive can detain them. Right, Your Honor. Isn't the point whether the Constitution has a role in this as opposed to whether the court has a role in this? Excuse me, Your Honor. Yes, I misspoke. Whether the Constitution imposes a limit on the government's ability, in this case, the jailer is ICE, whether ICE can continue to detain them. If you look at Hernandez-Lara, the period of detention there was 10 months before the individual was eventually released. In Velasco-Lopez, it was 14 months before the individual got a bond hearing that complied with due process and was eventually released. So we're not talking about the one and a half months at issue in D'Amour, we're talking about very long detention. Counsel, I want to ask you what I asked your colleague as to how we go about analyzing this. A lot of the district court cases and some of the other circuits have done a Matthews versus Eldridge analysis, but the Supreme Court in D'Amour does not. And I recognize the issue is a different subsection and it's not specifically the burden of proof issue. But it seems hard for me to do a different analysis moving from subsection C to subsection A. I mean, there's just nothing about that. And it looks to me like the Supreme Court tells us that in the world of immigration, here's the analysis we do. And certainly nothing's happened since D'Amour that from the Supreme Court that's changed that. Do you disagree that we should apply the analysis of D'Amour where we look to see whether Congress, whether there's evidence that Congress was trying to address, namely whether these non-criminal aliens were a risk, there was a risk of not hearings and whether in light of that, deferring to the agency to have to do that was reasonable or not. And with the condition that it doesn't have to be the most, the least burdensome method, isn't that the way we look at this? So your honor, I would say actually D'Amour is not on point. So for two reasons. You said what? Could you go back? I missed you. Sure. That D'Amour actually does not control the analysis here for two reasons. The first one is that the government is not arguing here that Congress has set the rules that apply at these bond hearings in the way that it did for criminal aliens under 1226C. And so they point to a the reason why individuals weren't showing up for the hearings was because they weren't being detained. That statement in the legislative history actually goes to the desire to increase bed space, not to the desire to flip the traditional burden of how these bond hearings have been operating for decades to now put the burden on the non-citizen. But second, your honor, as you were asking the government this question, I actually made a note to myself and said to me, the case that best illustrates this is actually Salerno. So the defendant in Salerno had two challenges. And the first one is that the more type challenge, right? Is Congress as a substantive due process, is Congress authorized to engage in this type of detention? So the issue in Salerno was until the Bail Reform Act, free trial criminal detention had to be saying Congress can't do that. That's my substantive due process challenge. And the court says, no, it looks at the history of the Bail Reform Act. It looks at what Congress had before it. And they say, yes, Congress can constitutionally do this consistent with due process. Now make this detention determination based solely on dangerousness. That's what the more does. And it's almost exactly the same analysis. It looks at IRA. It looks at what constitutionally make this determination for this narrow category of people. It doesn't, however, talk about the procedural due process question. Salerno goes on to do that. So Salerno then says, now there's a separate procedural due process challenge about whether the procedures that are employed are satisfied procedural due process. And it goes on to say, yes, because the government has the burden by clear and convincing evidence. That question doesn't come up in the more. In fact, if you look at one of three of the opinion, the court is clear. We're not touching the procedures. We're not talking about procedural due process here because this defendant did not go through the Joseph hearing. They did not try to follow those procedures to challenge their detention. So this is not a question about procedures. This is a question about substantive due process. And so for that reason, the more doesn't control. And I would say that if the government is right, that all that the court needed to say in the more was immigration is different. The power of the government to detain here is so strong that we'd look no further. There would have been no reason for the court to engage in the very detailed analysis of the evidence that was before Congress before they pass a mandatory detention statute. The court spends four pages of the opinion from pages 518 to 521 looking at the studies and looking at the reports and looking at the testimony that was before Congress. But that would have been unnecessary if all that the court needed to say is detention is valid during deportation proceedings. That's that. The Congress can do whatever they want. Can I ask a slightly different question, just to make sure? Mr. Espinoza, can you tell us his status? Yes, Your Honor. So Mr. Espinoza has, as it's clear from the pleadings, was released after he was granted a new bond hearing following the procedures of the district court had set out. His individual cancellation claim and claim for asylum were denied and the board has dismissed his appeal. He's currently pending an application for relief from his wife that would make him eligible to move to reopen those proceedings and get status. Can you just address mootness in light of his current status? Well, Your Honor, the district court below actually addressed the same question with respect to Mr. Miranda and Mr. Thompson, because by the time that the order is entered in this case, they had also been they have been granted withholding an asylum respectively and have been released from detention. But the court that's there says the case law is clear that where they're seeking to represent the class for these transitory claims, that these individuals who have been released can continue to represent those interests. And there's an amicus brief that was filed before the court. So let me just ask one more question and then you can go to amicus briefs if you want to. So if we found under 1252 F1 that you can't bring a class, then would that mean that your whole case is moot? Your Honor, we would ask- Because you no longer have a, you don't have that class claim any longer? Well, Your Honor, we would ask for the opportunity to brief that. There's sort of the question about whether they can pursue class-wide, for example, declaratory relief, or whether this possibility of relief for Mr. Espinosa himself means that he has enough of an estate. The government hasn't raised it. So to be honest, we haven't briefed it or looked at the case law. But I would like the opportunity to address the F1 question, because I do think that the court should proceed to address the merits and affirm the injunction below. And that the F1 question, the F1 statute doesn't pose an obstacle. First, the government has to- Before you do that, can I ask you just a remedy question? If we disagree with you on this and we find that F1 does prohibit the injunction, what is the correct remedy in that context? Would it be to vacate the lower court decision for violating 1252 F1? Or would we also reach the merits? Again, Your Honor, we would ask for- The government hasn't suggested that there's a mootness problem. So we haven't had the opportunity to brief. The question of whether- That wouldn't be moot. That would just say that you can't get the preliminary injunction that you've sought. So the preliminary injunction was invalid under 1252 F1. I know you don't agree with it. I'm just trying to understand conceptually. And so therefore, the injunction is vacated under 1252 F1. My question is, in that context, would we stop there or do we then go on and address the merits? Under the hypothetical that I'm disagreeing with you under 1252 F1, I understand that you have an argument you want to make. So, Your Honor, I would say the reason why I'm referencing back this question of mootness is because if the court looks at the decision in the Narnes-Lara, that decision is just about one individual. And so to the extent that there are plaintiffs who continue to have an interest, either in their own cases or because they can seek declaratory relief on behalf of the class, then that would permit the court to answer the merits. But again, we haven't briefed it, we would ask the court for the opportunity to do that. If the court would just permit me two quick points about the F1 question. The first one is that we set out in our brief, the F1 provision is not a jurisdictional provision. It goes to the court's relief power and not to the court subject matter jurisdiction. And the government here just failed to raise it. They don't raise it in opposition to the PI. They don't seek a stay. They don't seek for reconsideration on the basis that the court ruled more broadly than they were expecting. They don't even put it in their docketing statement when they file a notice of appeal in this court. It's not until the opening brief that the F1 issue makes its appearance. So it's not jurisdictional and the government has unquestionably waived it. But if the court reaches the merit, I would direct the court to the DC Circuit's position in Grace versus Barr, where I think one of our main arguments about why F1 is not an obstacle here. The court there is clear to say F1 talks about injunctions that enjoin the operation of the statute. So a constitutional challenge to 1226C, for example, saying for everyone in a class, after a certain amount of time, you have to give them bond hearings, mandatory detention no longer applies. That's clearly an injunction that enjoins the operation of the statute. Here we're talking about agency procedures that are not set out in the statute. So under the government's view, if the Attorney General here had said, we're going to decide bond hearings under 1226A by flipping a coin, an injunction against that would, in their opinion, enjoin the operation of the statute. That's nowhere set out in the statute. That's clearly not what F1 was meant to address. Thank you, Counsel. Thank you, Your Honor. Ms. Moran, I think you have a few minutes. Thank you, Your Honor. On 1252F1, the government did brief this in response to the petitioner's motion for class certification before the district court. The district court decided not to rule on that and instead granted class-wide relief without addressing the motion for class certification. So we did raise it below. It is also a jurisdictional bar. As the Supreme Court plainly said in Jennings v. Rodriguez, 1252F1 does not allow any lower court the jurisdiction or authority to grant class-wide relief, excuse me, class-wide injunctive relief. An injunction here does restrain the operation of the statute because this statute gives the during their removal proceedings. If a district in Jennings was clear about what 1226A means in its decision, and so any injunction like the court's injunction here that goes beyond that is affecting the operation of the statute and is barred, we don't think that the court necessarily needs to rule on that, though, to vacate the injunction because on the merits, Salerno, another point from Salerno, discusses that to prevail in a facial challenge, which is what petitioners have brought here and what the district court's injunction is, it's not about prolonged detention. It's not about someone who is fighting or necessarily fighting their removability. It applies even where a non-citizen concedes removability, like all of the three main petitioners did in this case. It applies to their bond hearings that happen just a couple of weeks after they're detained, and the Supreme Court has never required those kind of procedures in the immigration context, and no other circuit court, other than the split decision, very recent split decision in the First Circuit, has ever required that in the initial bond hearing. Can I ask you a question? Following up on something that Judge Richardson asked Ms. Gonzalez with regard to the Bail Reform Act, which is where Judge Richardson's exactly right, we deal with that in the district court. I was magistrate judge for seven years, so I did bond hearings for seven years. I can quote Salerno, but isn't it fair to characterize the presumption of felonies and drug offenses that carry a sentence of 10 years or more, which is where the presumption is in the Bail Reform Act. Isn't it fair to sort of characterize that as the same sort of class of characters that would fall under 1226C, and 1226A is different. These are folks who aren't charged with crimes, and there are folks who wouldn't under the Bail Reform Act have to bear the presumption. So isn't it fair to sort of put the folks who have the presumption under the Bail Reform Act in with the 1226C folks and treat them differently from the 1226A folks, and the other folks who under the Bail Reform Act don't have to reflect the presumption of detention? Your Honor, I would respectfully disagree with the premise of the people that are detained under section 1226A have not been charged with crimes. Two of the name petitioners here were charged and convicted of crimes, including assault and driving under the influence. So even if they're not subject to mandatory detention, it's not necessarily that they have not committed any immigration violations or they don't have any criminal violations. And again, that is why the scope of the district court's order that... Commissioner Moran, fair enough. I agree with you that they may have committed some other crimes, but they didn't commit a crime that fell within the level of 1226C, right? That's correct. Counsel, if I could just... Can I just follow up Judge Richardson to finish up maybe this point? And this is where I think, and your colleagues responded to this and has some points, but I still think there's a question of DeMoore's applicability, if not controlling as instructive. To follow up on Judge Urbanski, it might have been better. Is the response there that it might have been better and made sense to have the burden only on the subsection C non-citizens, but DeMoore doesn't say we have to have the least restrictive means or the least burdensome. We have to have something that addresses the problem that is articulated by Congress. And again, your colleague is right that there's a lot of stuff about the criminal non-citizens, but I've read a lot of that, a lot more than I ever thought I'd be reading of a committee report. I mean, I think it's fair to say there's findings in there about non-criminal non-citizens showing up as well. So I guess my point is, if the question is, what's the most reasonable way you might do one thing, but is that really our job as an appellate court? Well, no, it's not your job or the district court's job, Your Honor, to assess what you might prefer as a policy matter. And DeMoore, as you said, says that the government need not use the least burdensome means to accomplish its goal of preventing flight and dangerousness during removal proceedings. If you'd permit me another second. In DeMoore, also, it discusses the Supreme Court's decisions in Carlson and Flores before the 1996 revisions in the law. And in those cases, they discuss the attorney general's discretion to detain or and in those cases, the attorney general, not Congress, the attorney general made a decision to categorically detain members of the Communist Party in Carlson and then through regulations that were addressed in Flores made a decision to categorically detain juveniles who entered without family members and then not releasing them to non-relatives, absent special circumstances. So the Supreme Court's decision, DeMoore, again, does not exactly address 1226A, but it does detail the Supreme Court's case law in this area that we think shows that the procedures that already existed sufficiently satisfy due process. And there is no support for the types of categorical rules that the district court created here to place the burden on the government in every single bond hearing and to require considerations of the two factors that petitioners prefer. So we'd ask this court to vacate the injunction. Thank you. Thank you. Obviously, we would love to come down and greet you and thank you both for your excellent help on this case. We'll take it under advisement and we'll recess for the day. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Michael F. Urbanski